## In re CASS & DALEY SHOE CO.

(District Court, D. Massachusetts. April 21, 1926.)

No. 34526.

Bankruptcy ⬤⟶287(1)—Referee held, under the facts, without jurisdiction by summary order to require trustee of fund for retirement of preferred stock of bankrupt corporation to turn over fund to trustee in bankruptcy.

Bankrupt corporation, under its articles created a sinking fund, to be held by a trustee, for redemption of its preferred stock, which it had the right to call at any time at a premium. The shares redeemed by the trustee were to be held by it and together with dividends, which were to be paid thereon, added to the fund. It was provided that, if any certificates called were not presented at once, the money for their redemption was to be held without interest until they were presented. The trustee was also given a lien on the fund for compensation and expenses. *Held*, that a referee was without jurisdiction by summary order to require the fund to be turned over to the trustee in bankruptcy, since, aside from the trustee's lien, holders of preferred stock might have rights in the fund of which they could not be deprived in a proceeding to which they were not parties.

In Bankruptcy. In the matter of the Cass & Daley Shoe Company, bankrupt. On review of order of referee. Reversed.

See, also, 11 F.(2d) 872.

Pillsbury, Dana & Young and Alfred P. Lowell, all of Boston, Mass., for Old Colony Trust Co.

Alexander G. Gould, of Boston, Mass., for trustees.

BREWSTER, District Judge. A referee has ordered the Old Colony Trust Company (hereinafter referred to as the "trust company") on summary proceedings to turn over to the trustee in bankruptcy a certain sum of money and certain shares of the preferred stock in the bankrupt corporation. A petition for review brings the matter before this court. The referee's certificate shows that the bankrupt corporation duly amended its agreement of association and articles of organization, by which amendment the corporation reserved the right to redeem any and all of the preferred stock at a premium. Provisions were made by which a sinking fund was created by annual payments to the trust company, to be made out of the earnings of the bankrupt and to consist of not less than 15 per cent. of the net earnings after deducting dividend requirements or 5 per cent. of the par value of the outstanding preferred stock, whichever sum was the greater.

According to the amendment, this sinking fund was to be used for the purchase on the market, or in calling at 110, the preferred stock from time to time.

The trust company had the same rights to redeem as the bankrupt corporation. Dividends on stock acquired in the sinking fund were to be declared and paid, and added to the sinking fund. When all the preferred stock had been acquired, it was to be retired and canceled, and the capital stock of the corporation correspondingly reduced.

Pursuant to the amended agreement of association, the bankrupt entered into an agreement with the trust company by which the corporation agreed to pay to the trust company the amounts called for by the amended agreement of association, and the trust company agreed to use the funds in the sinking fund in accordance with the provisions of said agreement of association. There were the usual provisions limiting liability of the trust company and providing for resignations and appointment of successors. There was a provision for terminating the trust when the trust company had acquired all of the preferred stock. The trust was also to be terminated if the stockholders further amended the agreement of association in any way to affect the sinking fund, or the rights, duties, or liabilities of the trustee. Upon termination of the trust, all the shares of preferred stock and all cash in the hands of the trust company were to be turned over to the bankrupt; but, if terminated by further amendment affecting the sinking fund, the bankrupt agreed to accept the securities and the cash in the sinking fund in trust "to apply the same in accordance with the legal and equitable obligations applicable thereto."

The trust agreement also contained other pertinent provisions. The trust company had a right, under the amended agreement of association and under the contract between it and the bankrupt, to call by lot shares of preferred stock, and the trust agreement provided that:

"If any of the shares so drawn shall not be presented and surrendered on the day so fixed (for redemption), the moneys remaining in the sinking fund applicable to the redemption of such shares shall thereafter be held by the trustee without any liability for interest thereon upon a special trust for the redemption of such shares when the same shall be presented and surrendered."

The agreement also provided that the trust company should be entitled "to be reimbursed by the company [bankrupt] for all proper outlays of whatever sort or nature to be incurred under this agreement, and

to receive reasonable compensation for any duties that it may at any time perform in the discharge of the same, and shall have a lien on the sinking fund and securities therein for all such outlays and compensation." The bankrupt corporation, as dividends on the preferred stock held in the sinking fund, paid to the trust company $5,029, which sum, together with 943 shares of preferred stock, which the trust company had acquired, constituted the sinking fund at the time of the filing of the petition in bankruptcy. It is this cash and these shares that the referee has summarily ordered the trust company to turn over to the trustee in bankruptcy.

The referee found that the trust company had no interest in the money or shares comprised in the sinking fund, that its title was only colorable, and that the trust company was not entitled to have its rights determined in a plenary suit.

In the course of his decision, the referee observes that:

"The Old Colony Trust Company * * * have no right, neither legal nor equitable, to claim the fund in question. By reason of their answer it seems that they are attempting to answer for the preferred stockholders, whom they claim are the true beneficiaries under the terms of the trust. This contention is unsound, in that, if the preferred stockholders claim any interest in the fund, they have failed to file an answer or petition for review, if they have been aggrieved by the order to turn over the fund to the trustees in bankruptcy."

I think this observation discloses error. The rights of the preferred stockholders, if any, in the trust funds, cannot be affected by their failure to appear and answer in these summary proceedings. They were never before the court, and that suggests one of the strong reasons why, in my opinion, the referee was without jurisdiction to pass upon the question whether the trust company was under any fiduciary duty to the stockholders.

Undoubtedly the referee had a right to go into the facts of the case, for the purpose of determining whether there was any basis for an adverse claim actually existing at the time of the filing of the petition; but, as was said in Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 S. Ct. 293, 46 L. Ed. 413, "jurisdiction may depend on the ascertainment of facts involving the merits, and in that sense the court exercises jurisdiction in disposing of the preliminary inquiry, although the result may be that it finds that it cannot go farther." See, to the same effect, in this jurisdiction, In re Tarbox, 185 F. 985.

The referee finds, as a result of this preliminary investigation, that the Old Colony Trust Company, as trustee under the terms of the trust agreement, had no title except a colorable one. If all possible rights in the trust fund were to be determined by the agreement alone, I might concur in this finding; but the referee overlooks the more important provisions of the amended agreement of association, which was made a public record, and if the laws of Massachusetts were complied with (and we must assume that they were in the absence of anything to the contrary) the provisions of the amended agreement of association were indorsed on the certificate representing the shares owned by the various holders of preferred stock. The referee, I think, again fell into error in holding that the trust was a secret one between the bankrupt corporation and the trustee.

Whether these provisions governing the relationship of the shareholder to the corporation gave the shareholder any rights, equitable or otherwise, in the sinking fund as against creditors, and whether the trust company held in trust for the benefit of the stockholders or for the benefit of the corporation, are questions involving, not only the rights of the trust company, but also the possibility that rights may be asserted in the funds by parties not before the court. In such a situation, it must be the law that the court is without jurisdiction to determine these rights in summary proceedings. I do not intimate that the preferred stockholders can successfully assert a claim to these funds as against the trustee in bankruptcy. I only go so far as to hold that the question cannot be determined in a proceeding which gives them no opportunity to be heard. Furthermore, under the terms of the agreement between the trust company and the bankrupt, the trust company had a lien upon the funds for its compensation, and, in view of Louisville Trust Co. v. Comingor, supra, this right in the trust company would give it a claim more than colorable.

I have reached the conclusion, therefore, that the results of the preliminary inquiry, properly made by the referee, show that the court is without jurisdiction to go further in the proceeding. His decision is reversed, and the order requiring the Old Colony Trust Company to turn over the assets to the trustee may be vacated.